# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| BARBARA DUBOSE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 2:15-cv-01009-TMP |

## MEMORANDUM OPINION

**I.  Introduction**

The plaintiff, Barbara Dubose, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI").[1]  The plaintiff timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  The parties have consented to the exercise of dispositive jurisdiction by a magistrate

---

[1] The plaintiff's SSI application was filed under the name "Barbara Jean Davidson."  Throughout the record, however, she has used the name "Barbara Jean Dubose."  There is no reason for the court to believe Davidson and Dubose not to be the same person.

judge pursuant to 28 U.S.C. § 636(c).  (Doc. 9).  Accordingly, the court issues the following memorandum opinion.

Ms. Dubose was 44 years old on the date of her SSI application. (Tr. at 20). She has a high school education and one year of technical college, and is able to communicate in English.  *Id.*  The plaintiff's past work experience includes employment as a substitute teacher.  (Tr. at 168).  Ms. Dubose asserts that she stopped working on March 15, 2012, due to migraines, high blood pressure, depression, arthritis, and swelling of the face and throat.  (Tr. at 167).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If she is, the claimant is not disabled and the evaluation stops.  *Id.*  If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id.*  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity will be made, and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can perform past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC along with the claimant's age, education, and past work experience, in order to determine if the claimant can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, then the claimant is not disabled. *Id.* The burden is on the

Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Dubose has not engaged in substantial gainful activity since her application date. (Tr. at 13). The ALJ noted that, although the plaintiff remained on the substitute teacher list for the Birmingham School District, she had not worked as a substitute teacher or received wages since March of 2012. The plaintiff received wages in 2011 and 2013 from the Birmingham Education Board, but the income did not exceed the maximum monthly earnings to be considered substantial gainful activity. *Id.* According to the ALJ, the claimant's major depressive disorder and post-traumatic stress disorder ("PTSD") are considered "severe" based on the requirements set forth in the regulations. *Id.* The ALJ also noted that the plaintiff suffers from the following non-severe impairments: hypertension, asthma, esophageal reflux, hypothyroidism, musculoskeletal pain, and borderline intellectual functioning. (Tr. at 14). However, the ALJ determined that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 15). The ALJ did not find Ms. Dubose's allegations regarding the intensity, persistence, and limiting effects of her impairments to be totally

credible and determined that she has "the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: the claimant is limited to simple, routine, and repetitive tasks with only occasional interactions with co-workers and the public. (Tr. at 17-18).

According to the ALJ, Ms. Dubose is unable to perform any of her past relevant work, she is a "younger individual," and she has at least a high school education, as those terms are defined by the regulations. (Tr. at 20). He determined that transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding of "not disabled" regardless of transferability of job skills. (Tr. at 20). The ALJ used the vocational expert's testimony to determine that there are a number of jobs in the economy that Ms. Dubose is capable of performing, such as food sorter, bench worker, and assembler. (Tr. at 20-21). The ALJ concluded his findings by stating that the claimant "has not been under a disability, as defined in the Social Security Act, since June 20, 2012, the date the application was filed." (Tr. at 21).

## II.   Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See*

*Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(e), 416.927(d).  Whether the claimant meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

### III.  Discussion

In her appeal, the plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence.  Particularly, the plaintiff points to the ALJ's consideration of the mental RFC assessment performed by Leslie N. Rodrigues, Ph.D., the third-party function report completed by the plaintiff's sister, and the hypotheticals posed by the ALJ to the vocational expert ("VE").

### A. *Rodrigues' Evaluation*

The ALJ discussed Rodrigues' mental RFC assessment as follows:

> In September 2012, a state agency doctor, Leslie N. Rodrigues, Ph.D., reviewed the then existing medical record regarding the claimant's alleged mental health issues. (Ex. 2A). Dr. Rodrigues opined that the claimant had moderate impairments in restriction of activities of daily living, and maintaining concentration, persistence, or pace. (Ex. 2A. pg. 5). In accordance with Social Security Ruling 96-6p, the undersigned considered the assessment[] offered by Dr. Rodrigues and found that it is consistent with the record. In weighing her opinion, it is noted that in addition to being a mental health expert, she is also a disability program expert. *See*, Social Security Ruling 96-6p. The undersigned thereby adopted her Functional Capacity Assessment.

(Tr. at 19). It is the plaintiff's position that, although the ALJ states that he adopted Rodrigues' Functional Capacity Assessment, the ALJ failed to adopt key portions of the assessment that, had they been adopted, would have precluded the plaintiff from work.

Rodrigues determined in her mental RFC assessment that the plaintiff had understanding and memory limitations, but was not significantly limited in her ability to remember locations and work-like procedures or her ability to understand and remember very short and simple instructions. (Tr. at 73). She determined that the plaintiff was moderately limited in her ability to understand and remember detailed instructions. (Tr. at 74). She also found that the plaintiff had limitations with sustained concentration and persistence. *Id.* According to Rodrigues, the

plaintiff was moderately limited in her ability to: carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. She also determined that the plaintiff had moderate difficulties in her ability to sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from symptoms, or complete a normal workday without an unreasonable number and length of rest periods. *Id.* Rodrigues stated:

> Claimant could carry out simple instructions and sustain attention to simple tasks for extended periods. Claimant would benefit from a flexible schedule and *would be expected to miss 1-2 days of work per month due to cognitive fatigue*. Claimant would benefit from casual supervision. Claimant could tolerate ordinary work pressures, but should avoid: excessive workloads, quick decision making, rapid changes, and multiple demands. Claimant would benefit from regular rest breaks, but would still be able to maintain an acceptably consistent work place.

*Id.* [Italics added].

Rodrigues also stated that the plaintiff had social interaction limitations, including moderate limitations in her ability to interact appropriately with the general public, accept instructions, or to respond appropriately to criticism from supervisors. *Id.* She stated that the plaintiff's "[c]ontact with the public should be casual and non-intensive. Feedback should be supportive. Criticism should be

9

tactful and nonconfrontational." (Tr. at 75). Finally, Rodrigues stated that the plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting, noting that the "[c]laimant could adapt to infrequent, well explained changes. *Id.*

The plaintiff argues that, by purporting to adopt Rodrigues' mental RFC assessment but failing to apply several of the limitations Rodrigues found to his own RFC determination, the ALJ failed to properly address the amount of weight really given to Rodrigues' opinion. The ALJ determined in his RFC that the plaintiff is limited to "simple, routine and repetitive tasks with only occasional interactions with co-workers and the public." (Tr. at 17). Those limitations accurately reflect a portion of Rodrigues' findings, but do not address Rodrigues' finding that the plaintiff "would benefit from a flexible schedule and would be expected to miss 1-2 days of work per month due to cognitive fatigue." (Tr. at 74). He also does not address the plaintiff's moderate limitations in her ability to maintain punctuality or to sustain an ordinary routine without special supervision. *Id.* He did not discuss Rodrigues' finding that the plaintiff is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors or her note that feedback given to the plaintiff "should be supportive," with criticism being "tactful and nonconfrontational." (Tr. at 75). Finally, the ALJ

did not discuss the finding that the plaintiff is moderately limited in her ability to respond appropriately to changes in the work setting.  *Id.*

The court recognizes that the nature and extent of the plaintiff's RFC and the application of vocational factors are "opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case."  20 C.F.R. §§ 404.1527(e), 416.927(d).  The court also understands that the ALJ is not required to refer to every piece of evidence in his determination, so long as his denial of the plaintiff's claim is not an arbitrary dismissal that does not consider the plaintiff's medical condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal citations omitted).  However, the ALJ is required "to state with particularity the weight he gives to different medical opinions and the reasons why."  *McCloud v. Barnhart*, 166 Fed. Appx. 410, 418 (11th Cir. 2006), citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

When the ALJ stated that he adopted Rodrigues' mental RFC assessment, he did so without any apparent exception.  Had he given great weight to some portions of Rodrigues' assessment and little or no weight to others, he is required to state which portions to which he applies great weight versus little or no weight.  He also must make clear his reasons for doing so.  Otherwise, the ALJ's cherry-picking of the assessment seems arbitrary.  Accordingly, it must be presumed that the ALJ adopted Rodrigues' mental RFC determination in its entirety.  Failure to

apply parts of the RFC determination without explanation treads over the "arbitrary dismissal" line and does not allow the court to presume that the ALJ considered the plaintiff's condition as a whole.

### B. *Vocational Expert Testimony*

The plaintiff further argues that the ALJ's failure to include part of the limitations found by Rodrigues in the ALJ's RFC determination was not harmless. The plaintiff contends that, had each of those limitations been included, the testimony of the vocational expert would have shown that the plaintiff is precluded from working any job. At the hearing, the ALJ addressed the VE as follows:

> Q[ALJ]  All right. Thank you.  For the first hypothetical please assume an individual capable of performing medium work.  This hypothetical individual should avoid concentrated exposure to operational control of moving machinery and unprotected heights. This person would be limited to simple, routine, and repetitive tasks. This person should have only occasional interaction with coworkers. Considering this hypothetical would the past job you just now identified [substitute teacher] be eliminated?
>
> A[VE]  Yes, it would.
>
> Q  Would there be any competitive jobs you could identify while considering the age, education, experience of an individual similar to that of claimant?  If so could you please provide three example jobs?
>
> A  Yes, your honor.  One such job would be food sorter, 734.687-082, unskilled. . . . Desk work, 977.684-026, unskilled, light. . . Assembler, 692.686-010,unskilled. . .
>
> . . .

> Q  For the third hypothetical please assume hypothetical one, however in addition a hypothetical individual would consistently miss at least two days of work per month on an unexcused or unscheduled basis. Given this hypothetical would all competitive jobs be eliminated?
>
> A  Yes.

(Tr. at 62-63).

The plaintiff argues that, had the ALJ adopted Rodrigues' mental RFC assessment to its full extent, he would have included in his RFC finding that the plaintiff would be expected to miss 1-2 days of work per month due to cognitive fatigue. According to the plaintiff, the VE's testimony indicates that such a limitation would preclude the plaintiff from any competitive job. Again, the determination of the plaintiff's RFC is within the purview of the ALJ. However, the ALJ purported to adopt Rodrigues' mental RFC assessment, which he is free to do, but he must make clear any exceptions to the full adoption of the assessment. Because the ALJ failed to note any exceptions in his adoption of Rodrigues' assessment or his reasoning for making such exceptions, it is not clear to the court why all of the limitations found by Rodrigues were not reflected in some way in the ALJ's RFC determination. Had the ALJ included all of the limitations,

particularly the expectation that the plaintiff would miss 1-2 days of work per month, a finding that the plaintiff was not disabled may have been precluded.[2]

### C. Third-Party Function Report

Finally, the plaintiff argues that the ALJ failed to properly address the third-party function report completed by the plaintiff's sister, LaTonya Davis. Again, the plaintiff argues that the ALJ stated that he gave great weight to the third-party assessment but cherry-picked information from the report to use in his RFC determination, failing to explain why he did not use certain other pieces of information. The ALJ addressed the third-party function report as follows:

> Prior to the hearing, the claimant's sister, LaTonya Davis, submitted a third party function report. (Ex. 3E). Ms. Davis reported that the claimant spent her days cooking and looking after her son. (Ex. 3E, p. 2). She also reported that the claimant went outside daily, was able to manage her finances and went to church weekly. (Ex. 3E, pgs. 4-5). Additionally, Ms. Davis stated that the claimant was able to get along well with others and authority figures, handle changes [in] routine and follow spoken instructions. (Ex. 3E, pgs. 6-7).
>
> . . .
>
> As mentioned above, the claimant was a caretaker to her school age son in addition to caring for her own personal needs. (Ex. 3E, pg. 2 and Ex. 4E, pg. 2). Additionally, she had the ability to cook, manage her finances and attend church weekly. (Ex. 3E, pgs. 4-5).
>
> . . .

---

[2] It is unclear whether the VE would have considered the plaintiff precluded from competitive work if she would be expected to be absent one day-per-month rather than two, as such a hypothetical was not posed to the VE.

14

> As previously mentioned, Ms. Davis stated that the claimant participated in a wide range of activities of daily living such as caring for her school age son, cooking and attending church. (Ex. 3E, pgs. 2, 4-5). These activities show a far more functional ability than what the claimant testified to and signifies that the claimant would be able to perform similar work related tasks. As such, this opinion is given great weight.

(Tr. at 17-19).

In the third-party function report, Davis states that, from the time the plaintiff wakes up until bedtime, the plaintiff takes her medication, bathes, watches television, naps, and helps her 9-year-old son with his homework. (Tr. at 174). The plaintiff prepares one meal a day—lunch—and the meal consists of either cereal or cold-cuts. (Tr. at 176). Davis asserts that preparing the meal takes the plaintiff about a half an hour. She also states that the plaintiff cannot stand over a hot stove without becoming dizzy. *Id.* Depending on how the plaintiff feels, Davis says she may make the bed or wash clothes, but needs help being motivated to do so. *Id.* Davis notes that the plaintiff goes outside once per day, but is only able to go onto the porch alone. (Tr. at 177). To go anywhere else, the plaintiff must have someone accompany her. *Id.* According to Davis, the extent of the plaintiff's outings consist of shopping for clothing or personal items roughly once a month, attending church weekly, and going to doctor appointments. (Tr. at 177-178). Davis also states that the plaintiff is afraid of being alone. (Tr. at 180).

The information in the third-party report used by the ALJ in his determination reflects only the most positive statements made by Davis about the plaintiff's abilities, and does not paint an accurate portrait of the report as a whole. Davis did say that the plaintiff handles change well, is able to follow spoken instructions, and gets along well with others and with authority figures, as reflected in the ALJ's RFC assessment. However, those statements do not accurately reflect the entirety of Davis's third-party report. The ALJ is not required to find a third-party witness to be credible or to give her opinion great weight, but the ALJ in this case did. (Tr. at 19). He gave certain parts of the opinion great weight while discrediting others. He also did not provide any reasoning for why he would do so. Rather, the ALJ's opinion uses the most positive information in the report, ignoring the majority of the report.

## IV.   Conclusion

The ALJ's RFC determination fails to set out an accurate picture of the information contained in the record. Although the ALJ is not required to find every witness to be credible or give equal weight to all opinions, he may not ignore relevant evidence. It is imperative that the ALJ address relevant evidence and, if he finds the evidence to lack credibility, give his reasoning. By claiming to adopt the mental RFC assessment by Rodrigues and purporting to give great weight to Davis' third-party assessment while leaving large swaths of those assessments out

of his determination, the ALJ created an inaccurate picture of the record and a misleading account of those documents in particular.

Upon review of the administrative record, and considering all of Ms. Dubose's arguments, the Court finds the Commissioner's ruling that Dubose was not disabled under the Social Security Act is not supported by substantial evidence. For the reasons set forth above, the undersigned concludes that the Commissioner's decision is due to be **REMANDED** with instruction that the ALJ specifically address each limitation found by Dr. Rodrigues and clarify the weight he gives to those limitations, and the reasoning therefore. If the ALJ continues to adopt Rodrigues' mental RFC in its entirety, his RFC assessment should so reflect. The ALJ also must clarify whether he indeed gives great weight to Davis's third-party assessment in its entirety and, if he does not, his reasoning for disregarding parts of it.

By separate order the court will remand the matter to the Commissioner for further consideration in light of this opinion.

DONE this 12th day of September, 2016.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE